IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**BARRY P. GRASS,**

    **Plaintiff,**

**v.**                              **Case No. 2:05-cv-00496**

**EASTERN ASSOCIATED COAL LLC,**[1]

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are two Motions for Partial Summary Judgment (docket sheet document ## 15 and 27) filed by defendant, Eastern Associated Coal LLC (hereinafter "Eastern"). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Barry P. Grass (hereinafter "Plaintiff") was employed by Eastern at its Harris No. 1 Mine. He was represented for collective bargaining purposes by the International Union, United Mine Workers of America (hereinafter "the Union"), and the terms and conditions of his employment were governed by the National

---

[1] According to Eastern's Memorandum of Law in Support of its Motion for Partial Summary Judgment concerning Plaintiff's denial of benefits claim (# 28), Eastern Associated Coal Corp. was converted to a Limited Liability Corporation ("LLC") in August 2005. Accordingly, the Clerk is directed to modify the style of the case on the docket.

Bituminous Coal Wage Agreement of 2002 (hereinafter "the Wage Agreement"). On or about May 22, 2003, Plaintiff was notified that he had been suspended, subject to discharge, for missing two consecutive days of work, after having been released to return to work by his treating physician, Dr. Nohl A. Braun[2], following a lengthy medical leave of absence. (# 15-3, Ex. B).

By letter dated June 2, 2003, Plaintiff was informed that his employment had been terminated, pursuant to Article XXIV of the Wage Agreement. (Id., Ex. A at 279-80). Pursuant to Article XXIII of the Wage Agreement, Plaintiff, who was represented by the Union, filed a grievance alleging that he had been discharged without just cause and seeking reinstatement, lost wages, and benefits. (Id., Ex. C). Eastern denied the grievance. On January 24, 2005, the Union withdrew the grievance prior to reaching arbitration on the issue. (Id.)

Plaintiff filed a letter-form complaint in the Circuit Court of Boone County on May 20, 2005. The complaint alleged that Eastern had wrongfully terminated Plaintiff and had denied him Sickness and Accident benefits. Plaintiff's complaint states:

> EACC fired me for missing 2 days work after they received a letter from Dr. Braun stating I was able to return to work. But he never let me know his position or gave me a return to work slip. In the step # 2 part of the grievance, Dr. Braun tried to reverse himself and tell

---

[2] Dr. Braun was also named as a defendant in this action, but his Motion to Dismiss was granted by the presiding District Judge on March 23, 2006. (# 30).

> the company that I was still disabled and a patient of his. So there is a deadlock [-] the Union said return me to work, and the company said fire me.
>
> I have since changed Dr's and picked up a psychologist that I had before I was forced to drop because of no income or benefits. This co. & doctor has cause[d] me many lost things. I lost my house, and I was sued over my car. And me and my family were so ashamed of using food stamps they would not stay in the store at check out time. I have been off from work since July of 2001 but I wasn't fired until May of 2003. After the first yr. my benefits ran out and I could not longer go to the Dr. or psychologist because of no ins. or the lack of funds. The president of our UMWA local finally told me I needed to apply for a disabled miner's card, which they took their time in letting me know about this. EACC also denied me $12,000 of S&A benefits I was due to[o] but she said I missed the deadline by 2 days. [But if I was [unconscious] they would have paid it. But I was sick with Major Depression and anxiety. I was to[o] sick to realize about a time limit.]
>
> With the lack of medicine I have suffered over the time I have suffered damage to my memory and my nerves which puts in doubt my ability to return to work. I am 48 years old now and I had planned to work until I was 55, at that time, I would be entitled to my pension. The last I was working I was making $70,000 a yr.
>
> When my wife and I first saw Dr. Braun after I was fired he said to us that it sounded like someone had set me up.

(# 1 at 6-7).

On June 20, 2005, Eastern removed the case to this federal court on the basis that Plaintiff's wrongful termination claim was preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that Plaintiff's claim concerning denial of his benefits was governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (#

3

1 at 1-3).

On November 15, 2005, a status conference was held in this matter. Plaintiff and counsel for the defendants attended in person. During the conference, Plaintiff indicated that he was disabled and had been awarded Social Security Disability benefits. Plaintiff further stated that the reason the Union did not pursue his grievance to arbitration was because it believed that Plaintiff was unable to return to work.

The undersigned explained to Plaintiff that his wrongful discharge claim was preempted by section 301 of the LMRA, and that in order to successfully bring a claim thereunder, Plaintiff must also sue the Union for failure to pursue his grievance through arbitration. Plaintiff stated that he did not wish to sue the Union, and the undersigned further explained that the time for filing such a lawsuit had already run.

The undersigned set deadlines for the filing of a Motion to Dismiss or Motion for Summary Judgment by Eastern, and a response and reply thereto. (# 12). On November 29, 2005, Eastern filed a Motion for Partial Summary Judgment concerning the wrongful discharge claim (# 15), and on March 1, 2006, Eastern filed a Motion for Partial Summary Judgment concerning Plaintiff's denial of benefits claim (# 27).

Pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was notified of his right to file a

response to both of Eastern's motions, and response and reply deadlines were set for both motions. (## 25 and 31). The motions are now ripe for consideration.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence of record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [his or her] right to judgment as a matter of law." Rodriquez c. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Incus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the party opposing summary judgment must offer more than

5

a mere "scintilla of evidence" sufficient for a reasonable jury to find in his or her favor.  Anderson, 477 U.S. at 252.

## ANALYSIS

**A.    Wrongful Discharge Claim.**

On November 29, 2005, Eastern filed a Motion for Partial Summary Judgment concerning Plaintiff's wrongful discharge claim (# 15) and a Memorandum of Law in support thereof (# 16).  Eastern's Memorandum of Law asserts that it is settled law that claims alleging a violation of a collective bargaining agreement arise under section 301 of the LMRA, and that an employee or former employee may bring a claim in federal court under section 301 only after exhaustion of the grievance and arbitration process as delineated in the collective bargaining agreement.  See 29 U.S.C. § 187; see also, Avco Corp. v. Machinists, 390 U.S. 557, 559-60 (1968); Smith v. Evening News Ass'n, 371 U.S. 195 (1962); Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965).  (# 16 at 3).  Eastern further asserts:

> In this case, it is undisputed that the terms and conditions of Plaintiff's employment are governed by a collective bargaining agreement.  Further, Plaintiff attempted to exhaust his remedies under the collective bargaining agreement by filing a grievance challenging his discharge.  The Union, however, elected not to pursue Plaintiff's grievance through arbitration.  Thus, the Agreement's dispute resolution procedures were not exhausted.

(Id. at 3-4).

6

Under DelCostello v. International Brotherhood of Teamesters, 462 U.S. 151, 163 (1983), notwithstanding the finality of the grievance and arbitration process, Plaintiff could have brought a suit against both his employer, for breach of the collective bargaining agreement, and the Union, for failure to fairly represent him through the entire grievance process.  However, Plaintiff failed to file suit against the Union in a timely manner and, in fact, has specifically stated that he does not wish to sue the Union.  Therefore, Eastern contends that Plaintiff is unable to maintain his section 301 claim.  (Id. at 4).

Plaintiff's termination notice indicates that his discharge from employment was based on Article XXII(i)(4) of the Wage Agreement.  Thus, the success of Plaintiff's wrongful discharge claim is necessarily dependent upon the interpretation of the Wage Agreement.  (# 15-3, Ex. B).  Therefore, the court proposes that the District Court **FIND** that the application of state law is pre-empted, and section 301 of the LMRA controls.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988).

"An employee seeking a remedy for an alleged breach of the collective bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer."  Clayton v. Union Auto Workers, 451 U.S. 679, 681 (1981) (citations omitted).

In <u>DelCostello</u>, *supra*, the Supreme Court held:

> [Where the union fails to fairly represent an employee through the entire grievance and arbitration process], an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding . . . . Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act . . . . "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" . . . The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301 . . . . but is a hybrid § 301/fair representation claim, amounting to a "direct challenge to the 'private settlement disputes under [the collective bargaining agreement]."

462 U.S. at 164.

Because Plaintiff did not fully exhaust his grievance and arbitration procedures, he is barred from pursuing a claim for breach of contract against Eastern alone. Furthermore, because Plaintiff's Complaint does not even allege a breach of the duty of fair representation by the Union, he cannot successfully maintain a hybrid suit, as described in <u>DelCostello</u>. Additionally, even if Plaintiff sought to amend his complaint to include allegations that the Union breached its duty, such a claim would now be untimely under the six-month statute of limitations provided under section

10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Eastern is entitled to judgment as a matter of law on Plaintiff's wrongful discharge claim, as stated in his complaint. It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Eastern's Motion for Partial Summary Judgment concerning Plaintiff's wrongful discharge claim (# 15).

### B. Denial of Benefits Claim.

Plaintiff's Complaint also alleges that Eastern denied Plaintiff $12,000 in Sickness and Accident benefits. (# 1 at 2). On March 1, 2006, Eastern filed a Motion for Partial Summary Judgment concerning Plaintiff's denial of Sickness and Accident benefits (# 27) and a Memorandum of Law in support thereof (# 28). The Memorandum states in pertinent part:

> Article XI of the Wage Agreement (Exhibit A hereto) requires employers to maintain a Sickness and Accident Benefits Plan, which provides benefits for workers who become disabled due to sickness or accident . . . . [Under Eastern's Plan,] [b]enefits are payable for up to 52 weeks depending on the employee's length of service with the employer. Ex. B at 129. At the relevant time, the weekly benefit amount was $325. *Id.* at 130. The Plan is an "employee welfare benefit plan" within the meaning of § 3(1) of [ERISA].
>
> Under the Plan, eligible employees must give the employer written notice of disability, "including certification by a licensed physician upon request of the Employer," within 21 days of the first day of disability. *Id.* The 21-day time limit does not apply in instances of physical incapacitation:

> If . . . the Employee is unable to give such notice within the 21-day period due solely to physical incapacitation and notice is subsequently given by the Employee when his physical condition improves sufficiently to allow him to give such notice or have it furnished by someone else on his behalf this 21-day limitation will not apply.

*Id.* An unresolved dispute about an employee's claim for benefits "shall be submitted to resolution at the fourth step of the grievance procedure . . . ." *Id.* at 131. The fourth step of the grievance procedure call for arbitration by a district arbitrator. *See* Defendant [Eastern's] Motion for Partial Summary Judgment ("First MSJ") Ex. A at 275.

(# 28 at 1-2).

According to Eastern's Memorandum, Plaintiff signed a Notice of Claim for Sickness and Accident Benefits on August 27, 2001, which was received by Eastern on September 12, 2001. (# 27, Ex. C). The Memorandum further states:

> The notice indicates that Plaintiff was hospitalized from July 17 to July 19, 2001, and that his last day of work was July 24, 2001. The Attending Physician's Statement, which was signed by Dr. Braun on September 4, 2001, states that Plaintiff was "continuously totally disabled" from July 17, 2001 to July 19, 2001, and not thereafter. Ex. C at 2. The letter complaint in this action alleges that Plaintiff was told that he had missed the deadline for submission of the Notice of Claim by two days. Compl. at 2. To Eastern's knowledge, no additional efforts to secure Sickness and Accident benefits were made either by Plaintiff or the Union.

(# 28 at 2-3).

Eastern asserts that Plaintiff's denial of benefits claim is completely preempted by sections 514(a) and 502(a) of ERISA. 29 U.S.C. §§ 1144(a), 1132(a). Eastern further asserts that Plaintiff

10

failed to exhaust his remedies under the plan's internal claims review procedures prior to filing the instant lawsuit. Finally, Eastern asserts that Plaintiff's Notice of Claim was untimely and, thus, he is not entitled to recover the benefits he seeks. (# 28 at 5-8). Accordingly, Eastern moves for summary judgment on Plaintiff's denial of benefits claim.

Plaintiff's Complaint contends that he should be excused from the 21-day time limit because he was suffering from "major depression and anxiety" and was "to[o] sick to realize about a time limit." (# 1 at 2). Plaintiff further asserts that the failure to timely file his medical certification was the fault of Dr. Braun. (# 34 at 2).

In its reply memorandum, Eastern asserts that Plaintiff has neither challenged the requirement that disputes under the Plan must be submitted to arbitration, nor provided any excuse for his failure to pursue arbitration on the denial of his benefits. (# 36 at 2). Eastern further asserts that, to the extent that Plaintiff contends that the 21-day time limit should be excused because of his mental health during that time period, Eastern was free to differentiate between physical and mental incapacitation:

> As explained in Eastern's opening brief, matters of plan design, to the extent that they are not expressly prohibited by ERISA, are within the discretion of the plan's creator as the "settlor." *See, e.g., Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995); *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993). Nothing in ERISA prohibits plan terms like those in issue.

(Id. at 3). Accordingly, Eastern contends that mental incapacity is not a valid basis for failure to comply with the 21-day requirement and is not a basis for waiver of that requirement. (Id.)

Section 514(a) of ERISA provides that with limited exceptions, "the provisions of this title . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As noted by Eastern, an "'employee welfare benefit plan' for purposes of ERISA is 'any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .' 29 U.S.C. § 1002(1)." (# 28 at 2). Based upon this definition, the undersigned proposes that the presiding District Judge **FIND** that Eastern's Sickness and Accident Benefits Plan is an "employee welfare benefit plan" under ERISA.

Furthermore, the enforcement provisions contained in section 502(a) of ERISA provide the exclusive remedy for plan participants, beneficiaries and fiduciaries. 29 U.S.C. § 1132(a)(1)(B); see also Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc., 102 F.3d 712, 714 (4th Cir. 1996). Therefore, when dealing with a

state law claim concerning the denial of benefits under an employee welfare benefits plan, the state law claim should be re-characterized as a federal claim under ERISA. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's state law claim is completely preempted by ERISA and should be treated as a federal claim under ERISA.

Federal law requires that ERISA claimants must exhaust the plan's claim review process before bringing an action in federal court. See Hickey v. Digital Equipment Corp., 43 F.3d 941, 945 (4th Cir. 1995). Plaintiff does not dispute that he failed to pursue arbitration of the denial of his benefits claim and, therefore, failed to exhaust his administrative remedies under Eastern's Plan.

Normally, where a claimant has not exhausted his or her administrative remedies, the proper procedure would be to dismiss the federal complaint without prejudice and remand the matter to the Plan for exhaustion of those remedies. See Hickey, 43 F.3d at 945; see also Makar v. Health Care Corp., 872 F.2d 80 (4th Cir. 1989). However, in the instant case, the time for Plaintiff to pursue the available administrative remedies has expired. According to the Sickness and Accident Benefit Plan, an unresolved dispute concerning benefits "shall be subject to resolution at the fourth step of the grievance procedure" as set forth in the Wage

Agreement. (# 27, Ex. B at 131). Under the grievance procedure, Plaintiff had ten calendar days from the denial of his claim to submit the matter to arbitration and he failed to do so. (# 15, Ex. B at 275). Therefore, Plaintiff's claim cannot be remanded for exhaustion of his administrative remedies, and must be dismissed with prejudice. See Gayle v. United Parcel Service, Inc., 401 F.3d 222, 229 (4th Cir. 2005)(dismissing ERISA claim with prejudice for failure to exhaust administrative remedies).

Moreover, Plaintiff's claim for benefits was denied because it was not timely submitted. Under Eastern's Plan, Plaintiff had 21 days from the first day of his disability to submit his claim. Plaintiff's last day of work was July 24, 2001. His Notice of Claim was not received by Eastern until September 12, 2001. Eastern's Plan provides that the 21-day requirement may be waived based upon physical incapacitation, but not mental incapacitation, during that time period. As noted by Eastern, time limits incorporated into a plan's review procedures are "to be followed just as ordinary statutes of limitation." Gayle, 401 F.3d at 226. Therefore, Plaintiff's claim was untimely.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff failed to timely file his Notice of Claim, and further failed to exhaust his administrative remedies concerning the denial of his claim. Therefore, Plaintiff is not entitled to recover Sickness and Accident benefits, and Eastern is entitled to

14

judgment as a matter of law on this claim.  It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Eastern's Motions for Partial Summary Judgment concerning Plaintiff's denial of benefits claim (# 27).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

<pre>
    May 11, 2006                    /s/ Mary E. Stanley
        Date                        Mary E. Stanley
                                    United States Magistrate Judge
</pre>